L. R. BAIN *et al.*, Plaintiffs-Appellees, *v.* FINANCIAL SECURITY LIFE INSURANCE COMPANY *et al.*, Defendants-Appellants.

Fifth District  No. 76-523

Opinion filed October 6, 1977.

Heyl, Royster, Voelker & Allen, of Springfield (Gary M. Peplow, of counsel), for appellants.

B. C. Drumm, Jr., and David L. Rapp, both of Clayton, Missouri, and Pope & Driemeyer, of Belleville (Thomas W. Alvey, Jr., of counsel), for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a summary judgment entered in the circuit court of St. Clair County in favor of holders of 119/120th interests in a promissory note made by defendant Financial Security Life Insurance Company, a corporation, to Metromodular Corporation, and assigned by the latter to plaintiffs and one individual defendant.

On March 29, 1971, defendant Financial Security Life Insurance Company purchased certain real property and improvements from

Metromodular Corporation. Defendant paid part of the purchase price in cash at closing and the balance by its interest-bearing promissory note in the principal amount of $120,000 payable to Metromodular. At the same time Metromodular leased back from defendant the real property and improvements.

Two provisions of these written instruments are relevant for discussion of the issues raised on appeal. First, the note for $120,000 contains the following paragraph:

"It is expressly understood and agreed that Maker's obligations hereunder are subject to any and all amounts due it from Payee herein and/or any and all offsets to which it may be, during the term of this note, in any manner entitled as an offset against Payee upon any and all obligations of Payee to the Maker, whether executed concurrently herewith or subsequent to the date of this instrument, and that no other shall claim to be a holder of this note in due course without knowledge of Maker's claimed offsets."

Secondly, the lease to Metromodular provides that in the event of default or bankruptcy by Metromodular, defendant

" * * * shall have the right, at its election * * * to re-enter and take * * * possession of the leased premises * * * and to declare the term of this lease ended, whereupon this lease and all the right, title and interest of Lessee hereunder shall terminate and be of no further force or effect. In the event of such declaration, Lessor shall have the right to sue and recover all rents and other sums accrued up to the time of such termination including damages arising out of any breach on the part of Lessee. Lessor shall also have the right, without re-entering the leased premises or terminating this lease, to sue for and recover all rents and other sums, including damages, at any time and from time to time accruing hereunder."

Between April 19, 1971, and July 12, 1971, 100 percent of the interests in the note were sold and assigned by Metromodular to the plaintiffs and to defendant Alva F. Rauch. Thus, after July 12, 1971, Metromodular had no interest in the proceeds of the note as all of its interest had been transferred to various parties. In connection with the transfer of the interests in the note an escrow agreement was entered into between Metromodular and the First National Bank of Springfield whereby the bank was to receive payments on the note and distribute the payments to the various assignees as their interests appeared. In the event of default on the note the bank's sole obligation was to notify Metromodular and the assignees. The agreement provides, "other than for notice upon default, the Escrow Agent shall have no other responsibility as to the collection of said note."

Metromodular paid to defendant the sums due under the lease for the

months of April, May and June, 1971. Likewise, defendant made the required interest payments on the note for the same period. Each defaulted thereafter.

On July 30, 1971, Metromodular filed a petition in the Bankruptcy Court in the United States District Court for the Southern District of Illinois, Southern Division, proposing a chapter XI arrangement under the Bankruptcy Act. On September 22, 1971, Metromodular was adjudicated bankrupt (the proceeding having been changed to one under chapters I-VII of the Bankruptcy Act), and on that same day defendant, in the bankruptcy proceedings, filed a petition to reclaim property in which it was alleged that Metromodular had breached its lease by failing to pay rent for the months of July, August and September, 1971, defendant claiming its right to immediate possession of the leased premises and demanding that Metromodular and its trustee surrender possession of the premises.

Plaintiffs, assignees of 119/120ths of the interests of Metromodular, sued defendant on the note. They named as an additional party defendant, Alva F. Rauch, holder of 1/120th of Metromodular's interest in the note. The trial court granted plaintiff's motion for summary judgment and entered judgment on the note against defendant. Damages were calculated against defendant on the basis of 119/120ths of the amount due.

Defendant raises on this appeal the following issues:

1. The trial court erred in denying defendant's motions to dismiss plaintiff's complaint.

2. The trial court erred in striking defendant's first, third and fourth affirmative defenses.

3. The trial court erred in granting summary judgment.

The complaint in this action was filed October 19, 1973. The total interests held by the plaintiffs in the original complaint was 90/120ths. On January 11, 1974, an amended complaint adding additional parties was filed and on March 13, 1974, additional party plaintiffs were added to the complaint. A second amended complaint was filed on August 13, 1974, adding more party plaintiffs and a third amended complaint filed January 7, 1975, which alleged that 36 plaintiffs owned 119/120ths of the interests in the note and named as an additional defendant Alva F. Rauch who owned 1/120th.

Defendant, Financial Security Life Insurance Company (hereafter Insurance Company), filed motions to dismiss on February 19, 1974, and on March 29, 1974, questioning the standing of the plaintiffs to sue on partial assignments of a chose in action. The trial court denied each motion.

■■■ The law in Illinois is that partial assignment of an instrument is

not binding on the payor unless such assignment is accepted by the payor. As the court stated in *Standard Discount Co. v. Metropolitan Life Insurance Co.* (1944), 321 Ill. App. 220, 224, 53 N.E.2d 27, 29:

"The authorities cited state the reason to be that a person might not be vexed twice by the same action, and this is the reason as shown by the decisions in all States to the effect that an action at law may not be split up by partial assignments to several persons."

Therefore, the trial court improperly denied defendant's motions to dismiss made *prior* to the filing of the third amended complaint. That question is not, however, determinative of this issue.

At the time the trial court entered its order for summary judgment, the plaintiff's complaint did name all of the assignees of the note and, therefore, all parties were before the trial court. We note, too, that the trial court itself could have brought the defendant Rauch into the case pursuant to section 25(1) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 25(1)) which provides:

"If a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in. If a person, not a party, has an interest or title which the judgment may affect, the court, on application, shall direct him to be made a party."

The procedure was not herein followed and the effect of plaintiffs' act in naming Rauch a party defendant is, quite frankly, to force, at plaintiffs' unfettered discretion, the defendant Rauch and the defendant Insurance Company to either litigate a claim, which either or both of them may very well not wish to litigate, or, in the case of defendant Rauch, face the real possibility of being collaterally estopped at a later date and, in the case of defendant Insurance Company, face the real possibility of being vexed twice by the same action. This is exactly the posture in which we find this case at this time in light of the fact that the trial court did not enter any order with regard to defendant Rauch, although it did find the amount due defendant Rauch on the note in question.

However, we also realize that either or both defendants could have avoided the latter possibilities by litigating Rauch's interest between themselves in this proceeding by way of counterclaims. Ill. Rev. Stat. 1973, ch. 110, par. 38(1).

■■■ Where, in a case such as this, in excess of 99 percent of the holders of an interest in an assignment involved wish to seek an adjudication of their rights, we feel that the reason for the rule in *Standard Discount Co.* fails, and that the ends of equity would not be adequately served by denying them an adjudication because the holder of 1/120th of that interest does not choose to join. We attach two caveats to this holding, however. First, we believe that it was error, albeit not here

reversible error, for the plaintiffs herein not to have proceeded pursuant to section 25 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 25(1)) to seek an order by application in the trial court directing the defendant Rauch to be made a party and his rights fully adjudicated. Secondly, in no way by this holding do we make any ruling on the question of the propriety of such a course as plaintiffs have here pursued in joining such an interest holder as a defendant where any *less* than 99 percent of the interest holders are seeking an adjudication of their rights in an assignment.

■■ Defendant contends that the complaint should be dismissed because the instrument being sued upon is not a negotiable instrument and that the complaints do not comply with section 22 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 22). This issue was not raised before the trial court, and is therefore not properly before this court. (*Murphy v. Kumler* (1951), 344 Ill. App. 287, 100 N.E.2d 660.) This statute provides in pertinent part as follows:

"The assignee and owner of a non-negotiable chose in action may sue thereon in his own name. He shall in his pleading on oath allege that he is the actual bona fide owner thereof and set forth how and when he acquired title. The action is subject to any defense or set-off existing before notice of the assignment."

It is noted in passing that the third amended complaint does comply with this statutory provision.

Defendant additionally claims that the complaint should be dismissed because of the failure to join an indispensable party. Defendant claims that the First National Bank of Springfield, because it was escrow agent and holding the note in its possession, was an indispensable party. We disagree. Section 24(1) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 24(1)), in pertinent part state˜:

"Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the controversy arose, or whom it is necessary to make a party for the complete determination or settlement of any question involved therein, or against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined."

■■ The bank has no interest in the outcome of this controversy and is an escrow agent in the purest sense. In order for a party to be an indispensable party, the judgment must deprive the omitted party of a specific property or impair its ability to enforce a claim. (*Theodorou v. Community Builders, Inc.* (1972), 6 Ill. App. 3d 277, 285 N.E.2d 474.) In

this case no such result vis-a-vis the First National Bank of Springfield is likely, or even conceivable. Furthermore, a complete determination of the questions herein may be had without the bank's presence, and certainly no liability is here asserted against the bank of sufficient substance to make it a necessary party within the meaning of the statute. There is, thus, no error in failing to join that bank as a party in this cause.

■■ Finally, defendant argues that the motions to dismiss should have been granted because the assignments of interests in the note were securities created in violation of various Federal and State security laws. If the interests are securities, and as such, were improperly registered and sold, which we do not decide here, the interests are not, therefore, void. The securities laws govern the registration and sale of securities and provide both criminal and civil penalties for violations thereof. The securities laws do not render a "security" void and unenforceable from its inception, but rather provide for sanctions against those violating such laws. No error, therefore, occurred by the trial court's denial of defendant Insurance Company's motion to dismiss on this ground.

Defendant's first affirmative defense alleges that two of the plaintiffs, Bertani and Strano, were owners of 62/120ths of the note and had received payments in satisfaction of their interest by virtue of an action in the United States District Court for the Eastern District of Missouri, Eastern Division, against eight individual defendants, five of whom had been officers or directors, or both officers and directors, of Metromodular and three of whom were alleged to have been the agents of such officers or directors in effecting the sale of the 62/120ths in the note. Metromodular Corporation was *not* a defendant in that action. The complaint in Federal District Court alleged violations of section 4, 12(1), 12(2), and 17 of the Securities Act of 1933; Rule 10(b) of the Rules and Regulations under the Securities Exchange Act of 1934; The Missouri Uniform Securities Act; and common law fraud. As required by the securities laws and cases decided thereunder, plaintiffs Bertani and Strano tendered their assignment (the 62/120th interest) into court, demanded the rescission of the transaction and the return of their $57,000 consideration, together with interest. Trial was commenced on July 30, 1973, and continued until August 1 when the case was settled. Pursuant to the settlement agreement, the five defendants who had been officers or directors, or officers and directors, of Metromodular Corporation, paid a total of $3,850, and the three "agents" paid a total of $11,000. With regard to defendant Berra, judgment was entered for $20,000, but satisfied upon payment of $10,000 pursuant to the terms of the settlement. Also, as part of the settlement, plaintiffs Bertani and Strano withdrew the tender of

their 62/120th interest in the note. Thus, plaintiffs received, in settlement of that suit, the total sum of $14,850 damages and they retained their interest in the note. In their uncontradicted affidavit in support of plaintiffs' motion for summary judgment filed February 13, 1975, it is stated:

"Since on or about July 12, 1971, we have continuously owned and held said 62/120 interest in and to said promissory note and we are currently the owners and holders of said 62/100 interest in and to said promissory note."

■■ According to the facts before the court on plaintiffs' motion to strike defendant's first affirmative defense, plaintiffs Bertani and Strano, at all times, have been and are the owners of their 62/120th interest in the note. As such, they are entitled to advance any cause of action accuing to them by virtue of such ownership. The suit in the United States District Court in Missouri involved violations of the securities laws by individuals who are not parties to the instant action. The payment made by such parties in settlement of the lawsuit cannot, under any legal or equitable theory, be considered as payments on the note or for and on behalf of defendant. The only issue ultimately presented in the instant case is the liability of defendant on its note. Any sums received by plaintiffs Bertani and Strano in settlement of the Securities Act case litigated in the United States District Court in Missouri are irrelevant and immaterial to the defendant Insurance Company in this proceeding and are not allowable, as a matter of law, to reduce the sums owed by said defendant on its note. This is particularly true in light of the fact that the monies paid therein were for a settlement of claimed *individual* liability for the issuance and improper registration of alleged securities. The trial court did not, therefore, err in striking defendant's first affirmative defense.

Defendant's third and fourth affirmative defenses deal with matters previously discussed under the motions to dismiss, *i.e.*, failure to join the First National Bank of Springfield and the "non-negotiability" of the note. No issue of fact is created by these affirmative defenses and the trial court's action in striking these defenses was proper.

■■ Lastly, defendant claims that summary judgment was improperly entered because factual issues exist regarding set-off items such as real estate taxes, sale expenses and other matters which are factual, disputed and subject to proof. Additionally, defendant Insurance Company claims, on the same theory, that it is entitled to a set-off for unpaid rent. The trial court held that the lease had terminated by virtue of defendant's petition to reclaim property and the attendant lease provision set forth above. The question as to rent and other set-offs after September 22, 1971, is resolved by the fact that Metromodular, having been adjudicated a bankrupt on

that date and defendant Insurance Company having exercised its right to terminate Metromodular's lease on that date, Metromodular's obligation for rent and other set-offs under that lease thereafter ceased. (*Floro Realty & Investment Co. v. Steen Electric Corp.* (8th Cir. 1942), 128 F.2d 338; *Lipschultz v. Robertson* (1950), 341 Ill. App. 221, 93 N.E.2d 107, *rev'd on other grounds*, 407 Ill. 470, 95 N.E.2d 357. See also *In re Sound, Inc.* (7th Cir. 1948), 171 F.2d 253.) We, therefore, agree that a set-off for rent, or any other reason, after September 22, 1971, is not proper because the underlying lease giving rise to all defendant's set-offs was terminated as of that date.

However, plaintiffs concede that a set-off for unpaid rent prior to that date is proper, as are set-offs for the 1970 real estate taxes and closing costs on the sale. There is no dispute on the facts that these set-offs total $20,680.32. This figure then should have been deducted by the trial court from the total amount due the assignees, or if the trial court found (as it could have on the affidavits filed) that this amount was allowed and payable by Metromodular to defendant Insurance Company through Metromodular's bankruptcy proceeding, the trial court could have merely ignored that figure. The record, pleadings and briefs are, however, devoid of any facts or reasons why the trial court should have *added* that figure to the amount due the assignee noteholders. We, therefore, reverse insofar as the trial court's order of September 13, 1976, purports to establish the "Total Amount Due to 119/120 Plaintiffs" and remand this cause for a recomputation of the judgment amount in a manner consistent with this opinion.

Affirmed in part, reversed in part and remanded with directions.

CARTER, P. J., and KARNS, J., concur.